**Denise M. BEITER, Plaintiff–Appellant,**

v.

**Marvin T. RUNYON, Postmaster General, United States Postal Service, Defendant–Appellee.**

**Docket No. 02–6033.**

United States Court of Appeals, Second Circuit.

Nov. 1, 2002.

Christina A. Agola, Webster, NY, for Appellant.

Lynn S. Edelman, Assistant United States Attorney for the Western District of New York, Buffalo, NY, for Appellee.

Present MESKILL, NEWMAN and POOLER, Circuit Judges.

### SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, AD-JUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

Denise M. Beiter appeals from the district court's judgment dismissing her complaint pursuant to Federal Rule of Civil Procedure 56.

On December 30, 1996, Beiter, an employee of the United States Postal Service ("Postal Service"), contacted a Postal Service Equal Employment Opportunity ("EEO") Counselor. On January 21, 1997, Beiter filed an information for pre-complaint counseling. In support of that complaint, Beiter alleged that on December 22, 1996, her supervisor, Nick Fiala, stopped her as she left for a break. Fiala then questioned Beiter about where she was going, yelled at her, and told her to take her break and get her "butt back here." When Beiter asked Fiala why he was singling her out, he said that he did not like Fiala "or [her] work habits." After Beiter returned from her break, Fiala moved her to another unit where she would be under his constant supervision and replaced her with three other employees. After this reassignment, Fiala "constantly stared" at her "and paced behind [her] while whistling so as to make it a point to let me know that he was there watching [her]."

Beiter also referred to Fiala's "previously unreported sexual harassment ... in November of 1996" as well as to other "run-ins" related to her compensation case. Although Beiter identified the date of the sexual harassment as sometime in November 1996 and also claimed that it was

"constant," she later conceded that the only two touching incidents occurred sometime before September 23, 1996.

Finally, Beiter stated that she knew "of many other employees both male and female who feel that they have been harassed by Mr. Fiala, but are too afraid to come forward."

On February 21, 1997, EEO Counselor Sharon Henley sent Beiter a "Notice of Right to File Individual Complaint." Henley stated that management denied or adequately explained all of the allegations in Beiter's complaint. She further informed Beiter that management had agreed to send Fiala for sensitivity training. Finally, Henley advised Beiter that she had fifteen days in which to file a formal complaint. Beiter did not file a formal complaint. She claims that Henley dissuaded her from filing by telling her that it would be "futile" and she would confront sworn affidavits from three male supervisors who claimed that she had harassed them.

Beiter again contacted an EEO counselor on May 8, 1997, and pre-complaint counseling. This time Beiter complained of retaliation and continued harassment since her prior complaint. She alleged that Fiala's "constant demeaning attitude and vulturistic presence created a hostile work environment." Beiter also complained of two supervisors, alleging that one, John Burnham, failed to take proper steps to correct and investigate the December 22, 1996, incident and that the other, Mike Bozek, contributed to the hostile environment by allowing Fiala to enter her unit. On June 19, 1997, Beiter filed a formal discrimination complaint based on gender, disability—a panic disorder that allegedly developed after Fiala's initial harassment—and retaliation.

The Postal Service refused to accept for investigation all complaints concerning conduct on or before March 23, 1997, the 46th day prior to Beiter's contact with an EEO counselor. It found that the events alleged in Beiter's first EEO information and repeated in the second information had been abandoned because Beiter failed to file a formal complaint. The Postal Service also found that any actions not raised in the first information but occurring on or before March 23, 1997, were barred by Beiter's failure to contact an EEO counselor within 45 days. The Postal Service rejected a continuing violation theory for tolling the statute of limitations because Beiter acknowledged that she had a reasonable suspicion of discrimination long before she contacted an EEO counselor. However, the Postal Service accepted for investigation Beiter's allegation that "from March 24, 1997 through April 24, 1997, she was subjected to unwanted staring, touching, whistling and harassment by an Acting Supervisor (204–B)."

On October 7, 1997, Beiter filed this lawsuit. After the Postal Service issued its final determination on Beiter's remaining allegations, Beiter amended her complaint to include all of the allegations previously presented to the Postal Service. She claimed that defendant's actions violated Title VII of the Civil Rights Act of 1964.

After discovery, defendant moved for dismissal of the complaint based on Beiter's failure to exhaust her administrative remedies and the complaint's failure to state a claim. In the alternative, defendant requested summary judgment.

United States District Judge John T. Curtin granted defendant summary judgment. Judge Curtin first found that Beiter did not timely exhaust her allegation that Fiala stroked her on the arm and back based on Beiter's concession that these actions actually occurred before September 23, 1996, more than 45 days before

Beiter first contacted an EEO counselor. The judge rejected Beiter's claim of equitable tolling because she failed to allege any of the recognized bases for tolling.

The district court also found that Beiter abandoned the claims set forth in her January 1997 information by failing to file a formal complaint.

Addressing claims post-dating the January 1997 complaint, Judge Curtin held that plaintiff "failed to come forward with specific evidence to show that any discriminatory conduct took place within 45 days of her May 1997 EEO contact" and thus also dismissed these allegations.

Alternatively, Judge Curtin found that even if Beiter's hostile environment claim was timely, she failed to submit sufficient evidence to allow a reasonable jury to find a hostile environment. The judge dismissed Beiter's retaliation claim because she failed to allege an adverse employment action connected to her complaints.

On appeal, Beiter argues that (1) the 45–day period for contacting an EEO counselor should be tolled because she was unaware of the required procedure; (2) the district court should have applied equitable tolling to her failure to file a formal complaint within fifteen days; (3) the district court failed to credit her sworn testimony in finding that she alleged no actionable conduct within forty-five days of the second EEO contact; and (4) she submitted sufficient evidence to withstand summary judgment on both her discrimination and her retaliation claims.

■ We hold that whether or not Beiter's EEO contacts could be considered timely with respect to some or all of the conduct she alleges, she has not submitted sufficient evidence to support a hostile environment claim.

In order to prevail on her hostile environment claim, Beiter must show that "the conduct at issue is so severe or pervasive as to create an objectively hostile or abusive work environment" and that she subjectively perceived the environment as hostile. *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 436 (2d Cir. 1999) (internal quotation marks omitted). She "must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir.2000) (internal quotation marks omitted).

Beiter's proof can be summarized as follows. At some point before September 23, 1996, Fiala ran his hand up and down Beiter's arm. Later the same day, he rubbed his hand over Beiter's back in the area of her bra strap. On an unspecified date, Fiala told Beiter to limit her walking around because other supervisors were watching her. During the period following the physical contact, Fiala was also "overly friendly" with Beiter and attempted to engage her in conversation about non-work related matters.

On December 22, 1996, the incident that triggered Beiter's first contact with an EEO officer occurred. We already have described this incident.

After December 1996, Fiala's objectionable conduct was limited to walking through Beiter's unit and watching her even when he was not assigned to that unit. During his visits, Fiala sometimes whistled or made other sorts of noise. The whistling was not directed at Beiter. Fiala also observed Beiter on breaks and looked at his watch and glanced up at her. However, after the December 22 incident, Fiala did not yell at Beiter, make any comments about her work habits, touch her, or engage in overly friendly conversation.

Fiala's conduct viewed as a whole does not satisfy the objective test for determining whether a hostile environment exists.

Because the touching was not explicitly sexual, it did not by itself create a hostile environment. *See Richardson*, 180 F.3d at 437 (discussing cases indicating that scattered minor incidents of harassment do not create a hostile environment but that even a single episode of actual sexual assault does). The remainder of Beiter's allegations concern minor incidents and do not describe sexually charged behavior. Hence, the evidence she offers is insufficient. *Cf. Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir.1998) (holding that plaintiff's allegations that a supervisor told her "she had been voted the 'sleekest ass' in the office" and that "on another occasion, he 'deliberately touched [the plaintiff's] breasts with some papers that he was holding in his hand' " did not depict a hostile environment).

We agree with the district court that Beiter cannot sustain a retaliation claim because she offered no proof of an adverse employment action taken because of her prior complaint. *Quinn*, 159 F.3d at 769 (listing elements of retaliation claim including causal connection between protected activity and adverse employment action). Beiter here alleges that Burnham and Bozek retaliated against her for protected activity "by threatening her with disciplinary action, suspending her for seven days and wrongfully sending her home, claiming there was no work for her." In her complaint, however, Beiter unequivocally described the cause of these actions as "her disability and light duty status" and not as retaliation for protected activity. Moreover, Beiter's affidavit makes clear that she did not file an EEO complaint against the two supervisors until *after* they took the actions of which she complains. Therefore, the supervisors' actions could not have been motivated by a complaint made against them. Although Beiter's allegations are muddled, she can only be claiming that the two other supervisors retaliated against her because she filed an EEO complaint against Fiala some four months earlier. Finally, the statement Beiter submitted in support of the referenced EEO complaint did not mention the actions now claimed to be retaliatory. In light of Beiter's early unequivocal statement that it was disability discrimination that motivated the two supervisors, her failure to describe the alleged adverse employment actions in her May informal complaint and June formal complaint, and the very attenuated proof of any connection between the complaint against Fiala and the other two supervisors' subsequent actions, a reasonable fact finder could not find that retaliation motivated these actions against Beiter. Beiter's only other theory of retaliation, which she does not vigorously press here, is that the two supervisors retaliated against her by failing to keep Fiala out of her work area. This failure does not constitute an adverse employment action.